If it pleases the Court, my name is Michael Bigelow, and I represent Appellant in this manner. It seems to me the issue in this case is not what the trial court knew. That was the issue decided in the state court. The issue in this case is what trial counsel knew, and that is an issue addressed by neither the appellate court, the state appellate court, nor the state supreme court. Thus, deference is not in play in this case, as argued by Respondent. Why is there a difference? There's a difference because in a case like this, in a trial, in a normal trial, as we all know, trial counsel spends considerable amount of time with the client, theoretically, in jail, in meetings, in court, if they're out of custody, in his or her office. Trial counsel has an opportunity to know the client, to evaluate the client. Sotomayor You know, in reading the transcript of the Marsden hearings, the two of them, it seemed to me that there was nothing there that would trigger the idea that this man was not competent to aid in his own defense and didn't know what was going on. I'm not going to suggest otherwise to the Court. Anyway, that's kind of what really struck me as I looked at this case. But, but, there's always a but. Mentally ill, ill defendants, mentally ill defendants usually, not always, but usually know they are ill. Usually, my experience has been, and I've heard other lawyers and I hate, I'm not going to do that, but my experience has been that mentally ill defendants want to put on a good show for the court. They come to court and they do their level best to perform appropriately. Sotomayor Well, then, then that puts the counsel in a position of not having notice that the fellow may have something wrong. No. Because the notice comes not from that brief appearance in court, which may take a minute and a half or five minutes or ten minutes or 15 minutes. That notice comes from dealing with that client on a day-in and day-out basis. It puts the trial judge at a disadvantage. And again Is there anything in the record that suggests in the conferences before trial between this lawyer and the client anything but some disagreements about Therein lies the rub. That's the problem. There isn't. There is nothing in the record to suggest that. The only record What we're looking at was should this lawyer have been on notice. And Dr. Roeder says inferentially, yes. Now, Dr. Roeder says in July 2nd, Dr. Roeder interviews this defendant. The trial occurred April 21st. That's May, June, a little bit more than two months later. Dr. Roeder says this man's mental illness presented more than likely, more probably or probably presented in a significant manner. I'm paraphrasing. I'm not looking at it. I apologize. The Court has the record. I can read it if the Court wishes. But Dr. Roeder says that this defendant's mental illness presented at a time preceding his examination, sometime preceding the examination. That is unfortunately all we have. I thought I would be able to put We do have more. They sent him off to a Tascadero. And the diagnosis is he's a real malingerer. That is one diagnosis. That's one diagnosis from a Tascadero. But they also restore him to sanity. They also write a report that says he is restored to sanity. Now, they don't say that he was never insane.  But they send a certificate that says he is restored to sanity. So at some point, a doctor opined, Dr. Roeder opined, that he was incompetent under 1368 and 1367. That doctor made that observation, rendered that conclusion, if you will. He gets shipped off to a Tascadero. So we do have more. You're absolutely correct. We have the fact he was at one point incompetent. Now, all of the other is, sure, he's a malingerer. Dr. Roeder didn't think he was. The purpose of the ‑‑ it was thought at the time of the request for an evidentiary hearing and the courts, the magistrate and judges ordering an evidentiary hearing, it was thought that if I, as his counsel, were able to put the toothpaste back in the tube and go back, that would be wonderful. That would solve the matter. Well, my expert said he wasn't able to do that. And I wasn't going to go shop for an expert who was going to give me an opinion that would have fit nicely into this little cubbyhole. And so I'm stuck with what Dr. Roeder says. And there's one other thing. I just need to be frank about how I read this record. This defendant, very understandably, was very disturbed when he thought they were going to put three strikes against him. He knew that, and he did everything that he possibly thought that he could to get out of that. So it shows he knew what was going on. Well, within one context, perhaps. But the record that we have is Dr. Roeder. I mean, if we completely discount Dr. Roeder, fine. You know, the magistrate judge could have done that. The district court judge affirming could have done that. Somebody could have discounted Dr. Roeder and said, Dr. Roeder, you are wrong. There's no evidence to suggest Dr. Roeder was wrong. There's no ---- But there is the Atascadero incident. Well, again, as I read Atascadero, Atascadero says this man was insane. We are restoring him to sanity. Yes, he is a malingerer. Okay, fine. But that does not preclude the efficacy, I think, does not preclude the efficacy of Dr. Roeder's conclusion. We certainly don't have ---- well, okay. When we get to Strickland, the other thing, the other point that seems to me that needs to be made is this. In the usual Strickland IAC claim, we look to the probable result at trial. Would the jury have returned a verdict different than it did? And here we are not dealing with the probable end result of a jury trial, but the result, the probable result of the proceeding itself. Would the proceeding have been different had trial counsel said this man is ---- I am declaring a doubt whether this man is competent to stand trial. It is the procedure itself, the procedure of trial. A man can't sit through trial when he's incompetent. Had trial counsel made that determination and said, Your Honor, I have a doubt, Dr. Roeder would have been appointed. A finding would have been made, because a finding was made. Recall, a finding was made. The judge said, based on Dr. Roeder's report, I have a doubt and I am sending this man to a Tascadero, albeit in September, well after the fact. So we have that as well. So there would have been a different result. I've got a minute and 17 seconds, and I would thank the Court for its time. All right, thank you. May it please the Court, more CFA for the appellee respondent in this matter. On the initial point with respect to the deference, in this case, the Court of Appeal, State Court of Appeal, did address this issue in their decision. They did indicate that anything outside the record, it might be appropriate for a state habeas proceeding. He did go through a state habeas proceeding. We are at a posture here where no additional evidence was ever presented, other than the Dr. Heard letter that the district court discounted as not adding any new material evidence. So basically what was presented to the Court of Appeal and considered in their decision is exactly where we are here. Therefore, there is deference. Counsel, can you fairly characterize the Court of Appeal discussion as a reasoned decision on this issue? Absolutely. I believe they went through a very lengthy discussion with respect to the claim raised that the trial court had a sua sponte duty to issue a competency hearing. They spent a significant amount of opinion on that. Then they went on to the issue of whether counsel was incompetent not to ask after deciding that there's no duty of the court, the trial court. So they indicated there's nothing else in the record to indicate that counsel was on notice of any incompetency beyond what was before the trial court. So those two discussions together clearly was a reasoned, detailed discussion about why trial counsel was not incompetent on the record before the proceedings in the state court. Where is the discussion regarding IAC? It's CR 10, Exhibit D, and it's in the supplemental excerpts of record at 37-38. At the Court of Appeal decision, what page are you looking at? I... It would be 15 and 16. At the bottom of page 15 is the paragraph addressing the competence of his trial counsel. So what's the reasoning on page 15 and 16 and the discussion of Strickland? Well, they cite to the Wilson matter case, and in addition, as I mentioned before, they had completely gone through the record and the discussion about what would put the trial court on notice previously. So in conjunction with that full discussion on the sui sponte obligation of the trial court, I believe that the discussion of the Court of Appeal with respect to the ineffectiveness of counsel was a reasoned decision. They do not cite Strickland specifically in that discussion. But they do specifically address the incompetence of counsel. Regardless, even, and I do believe that deference is accorded here, but regardless, even without deference, it's clear that there's been no constitutional violation made out in this case on habeas. As the Petitioner has indicated, he was afforded an evidentiary hearing which withdrew his request. He could have presented at that evidentiary hearing what indication to counsel, what notice to counsel, he alleges, was in existence such that she should have been on notice to request an incompetency hearing. There's nothing in the record, even being afforded the opportunity to develop it, to indicate that she was on any notice, that there was any behavior on the part of the defendant in this case. In addition, the reliance on Dr. Roeder's decisions on behalf of the defendant, or letters, are, he specifically states in his second evaluation letter that, assuming that this is not malingered. So his decision, when you take the record as a whole, adds nothing to this case that Petitioner is requesting, that the trial counsel should have known or was on notice to investigate at the time of trial, that the defendant may have been incompetent. So unless the Court has any further questions, I'd submit. It appears not. Thank you. Rebuttal? All right. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the Court. The final case on calendar for argument today is Pollard v. Liberty v. City and County of San Francisco.
judges: Fletcher, Tashima, Rawlinson